## Case No. 2,822.

CLARK et al. v. GILBERT et al.

[5 Blatchf. 330;[1] 4 Int. Rev. Rec. 42.]

Circuit Court, S. D. New York. July 14, 1866.

INTERNAL REVENUE—BROKERS—ACT OF JUNE 30, 1864.

1. A person who, having a license as a banker, under the 1st subdivision of the 79th section of the internal revenue act of June 30, 1864 (13 Stat. 251), receives stock, bonds, &c., for sale for others, and sells them, charging the customary compensation, as a banker, and also loans money on stocks, bonds, &c., and sells such securities on account of the borrowers, and deducts from the sales the money loaned, with interest and the customary charges as a banker, is not liable to the tax of 1-20th of 1 per centum monthly, on such sales, under the 99th section of the act, which imposes such tax on brokers, and bankers doing business as brokers.

2. A person who purchases in his own name stocks, bonds. &c., for others, and advances his own money, and takes the transfers in his own name, and holds the stocks, bonds, &c., a security for the repayment of the money, and, on its repayment, delivers the securities as per agreement, or, in default of repayment, sells them to reimburse himself, and who also purchases and sells stocks, bonds, &c., for others, under certain stipulations as to risks, losses, and profits, is doing the business of a broker, and is subject to such tax of 1-20th of 1 per centum, monthly.

3. Under the 9th subdivision of the 79th section of the act, a person may, under his license as a banker, do business as a broker, without paying further license money; but, so far as he does business as a broker, he is to be regarded as a broker, and must pay a broker's tax on his transactions.

[2][This suit was brought by the plaintiffs [Luther C. Clark and others, comprising the firm of Clark, Dodge & Co.], who were regularly licensed bankers, to enjoin [Sylvester S. Gilbert and Sheridan Shook] officers of the revenue, from assessing and collecting from them the broker's tax on sales imposed by

section 99 of the excise act of June 30, 1864. An abstract of the points and argument submitted in support of the motion on the part of the plaintiffs to continue the injunction was published in volume 3, Record, p. 182.

[The officers of the revenue claimed under the instructions of the commissioner that the plaintiffs should pay such tax as bankers doing business as brokers. The counsel for the plaintiff made the points of which the substance is here given: (1) The tax imposed by the 99th section of the revenue act, is imposed upon brokers, and not on bankers. (2) The 79th section of same act expressly authorizes bankers to receive stock and securities for sale or discount, "and to lend and advance on such stocks and securities;" and this necessarily carries with it the right to sell the same, either to reimburse themselves or to discharge the duty to sell, imposed by the receipt of such stocks for the purpose of sale. (3) That the transactions in the fourth sub-division of the bill mentioned were equally exempt, because: (a) No tax is imposed on the purchase of stocks and securities but only on the sales. (b) When the purchase is made, no tax or duty is payable until the banker sells. (c) In such cases no sale is made, unless by order of the principal, or to reimburse the amount paid by the banker on the purchase, and in either case the transaction is within the category of "stocks received for sale or on which loans or advances are made." (4) That the distinction between the banker and the broker is clear and well defined, and that even if it should be that the transaction above mentioned were such as a broker might engage in, this did not convert the banker into a broker or deprive the banker of his exemption. (5) That even if the transactions in the fourth or other subdivisions should be decided to form part of a broker's business, and taxable as such, this did not render the plaintiffs taxable in respect to transactions which formed a part of the business of bankers. (6) That by combining the business of a banker and broker, the broker did not lose the exemption to which he was entitled as banker. (7) That even if the plaintiffs were taxable in respect to transactions had on account of others, this did not render them taxable on transactions made on their own account. (8) That the supreme court of the United States, in the Case of Fisk and Hatch, decided that bankers were exempt from taxation as bankers. (9) That in the Case of Cutting, that court decided that a broker doing business under the ninth paragraph of section seventy-nine was liable to pay taxes on all transactions specified in that paragraph. (10) That the supreme court had not decided that a banker licensed under the first sub-denomination of section seventy-nine was liable to pay any tax on the business for which he is so licensed, nor that where bankers engage in transactions in which brokers likewise en-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [From 4 Int. Rev. Rec. 42.]

gage that they thereby lose such exemption as bankers.

[The district attorney controverted these propositions, and, in addition to the oral agreement, presented a printed brief, in which the questions were thoroughly discussed.] [2]

John E. Burrill and William M. Evarts, for plaintiffs.

Samuel G. Courtney, Dist. Atty., for defendants.

NELSON, Circuit Justice. [The bill is filed in this case against the defendants, who are the assessor and collector of the thirty-second collection district of New York, under the internal revenue laws, for the purpose of restraining them from the assessment and collection of the tax claimed to have accrued against the plaintiffs as bankers, doing business as brokers within said district, under the following circumstances:] [2] The plaintiffs have a license as bankers, and have, from time to time, received at their banking-house, stocks, bonds, and bullion for sale, and also have, during the same time, received bills of exchange and promissory notes for discount and sale, and did discount and sell the same for the account of the parties from whom they were received, and charged the customary compensation as bankers, and, also, during the time aforesaid, did, at their banking-house, lend and advance moneys to various parties, on stocks, bonds and bullion, and, after such advances and loans, did sell said stocks, bonds and bullion, on account of the parties from whom the same were received, and to whom the moneys were lent and advanced, deducting from said sales the moneys so loaned and advanced, with interest and the customary charges as bankers, and also bought and sold stocks, bonds, &c., on their own account, and not on commission or for others.

The tax claimed as having accrued out of the above dealings is 1-20th of one per centum, monthly, on all such sales of stocks, bonds, &c., under the 99th section of the act of June 30, 1864 (13 Stat. 273), which imposes the tax on brokers, and "bankers doing business as brokers." The question in the case is, whether or not the plaintiffs, in carrying on the aforesaid business, under a banker's license, are to be regarded as bankers doing business as brokers.

The 1st subdivision of this 79th section of the act enacts, that bankers employing a capital not exceeding $50,000, shall pay $100 for a license, and two dollars for every thousand over this amount, and then defines the term "banker" thus: "Every person, firm, or company, &c., having a place of business (1) where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft,

check or order; or (2) where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes; or (3) where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or sale, shall be regarded a banker, under this act." Besides the license fee exacted, the banker, under the 110th section, pays a tax of 1-24th of 1 per centum, monthly, upon the average amount of deposits, 1-24th of one per centum, monthly, upon the average amount of the capital of his bank, beyond the amount invested in United States bonds, 1-12th of 1 per centum, monthly, on the average amount of circulation issued by the bank, and, in addition, 1-6th of 1 per centum, monthly, on the amount of circulation beyond 90 per centum of the capital. The license fee and the above tax are the burdens imposed on the banker for the privileges conferred. Now, among these, is the privilege of doing the business set forth in the bill of complaint and to which I have referred at large; and yet, it is claimed, that the plaintiffs are liable to the additional tax as brokers specified in the 99th section of the act. According to this construction, the license or privilege of the banker would be of little value. He might, indeed, receive deposits and pay them out, and advance or lend money on stocks, bonds, &c., but, in case of default in repayment, he must not sell the pledge to reimburse himself; and he may receive stocks, bonds, &c., for discount or sale, but is not at liberty to sell. If he does, it is insisted he instantly becomes a broker, and liable to the broker's monthly tax, in addition to the banker's, which he has already paid. I cannot agree to this view of the act. On the contrary, I am satisfied that the banker is, both by express terms, as well as by necessary implication, empowered to carry on the business authorized under his license, to its practical and useful results; that, when he is authorized to lend or advance money on stocks, bonds, &c., he has the right, in case of default in the repayment, to convert the security into money by way of reimbursement; and that, when he is authorized to receive stocks, bonds, &c., for sale, he may sell the same without, in either instance, making himself a broker.

The case of U. S. v. Fisk, 3 Wall. [70 U. S.] 445, decided by the supreme court at its last term, carried the privileges of the banker far beyond the present case; for, it was there held, that he could purchase and sell stocks, bonds, &c., for himself, and on his own account, under his license—a business not specified in the definition of a banker. That case, in effect, decided, that any business which a banker could carry on, as such, did not fall within the 99th section of the act.

The case of the plaintiffs, which is set forth in the fourth paragraph of the bill, is, in substance, that, in carrying on their busi-

---

[2] [From 4 Int. Rev. Rec. 42.]

ness as bankers, they purchase stocks, bonds, &c., for others, but make the purchases in their own name, and advance their own money, and take the transfers in their own name, and hold the stocks as security for the repayment of the money by the persons for whom the stocks are purchased; and, on receiving such repayment, with interest and the customary charges, deliver the stocks, bonds, &c., as per agreement, or, in default of repayment, sell the same to reimburse themselves. This business is not only outside of the business of a banker, as defined by the act, but comes directly within that of a broker, and is subject to the tax under the 99th section.

But, it is urged, that if the plaintiffs, in any of their dealings in stocks, bonds, &c., are brought within the category of bankers doing business as brokers, their whole business as bankers is thereby brought within it, and subjected to the broker's tax; and this extraordinary proposition is supposed to be decided in the case above referred to. The 9th subdivision of the 79th section, declaring who shall be a broker, is as follows: "Every person, firm, or company, &c., except such as hold a license as a banker, whose business it is, as a broker, to negotiate purchases or sales of stocks, &c., shall be regarded as a broker." The exception takes the banker out of the category of brokers; and, to make it more clear as to what was intended by the exception, a proviso is added, "that any person holding a license as a banker shall not be required to take out a license as a broker," meaning, obviously, that he may do business as a broker under his license as a banker. But, surely, there is nothing in the provision which thus permits the business of both a banker and a broker to be carried on under the banker's license, that suggests the idea, or gives any countenance to it, that dealing in both capacities merges the banker in the broker, so as to subject all his dealings to the broker's tax. The fair and natural inference would seem to be the other way, namely, that the broker is merged in the banker. But, I suppose, that the reasonable and proper conclusion is, that, although the license of the banker authorizes him to do the business of a broker without further payment of money, yet, so far as he may do that business, he is to be regarded as a broker, and must pay the broker's tax. This, I think, is not only the natural conclusion, and fair legal effect, from the provisions of the law referred to, but is confirmed, as will be seen, by the language of the 99th section, imposing the tax on brokers, which is as follows: "That all brokers and bankers doing business as brokers, shall be subject to pay the following duties," &c., clearly enough implying that the banker, besides carrying on his own business, may also engage in business as a broker; but, in such case, and as respects the business done as

a broker, he must pay the tax imposed, over and above what he has already paid as a banker. This view of the statute was taken in the case of U. S. v. Fisk [3 Wall. (70 U. S.) 445], and is stated in the opinion in a few words: "Now, a banker," says Mr. Justice Grier, "pays a much higher license-tax than a broker, and is permitted to 'prosecute or carry on' the business or profession of a broker without paying any further license; but, if he prefers, he may not combine that business with his own."

An injunction must issue in conformity with this opinion.

[NOTE. The case of Peabody v. Gilbert, Case No. 10,868, was heard and disposed of in accordance with the foregoing opinion at the same time.]